IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KYLE SCHMIDT,

                                      OPINION AND ORDER
                Plaintiff,

                                         21-cv-511-bbc
      v.

KILOLO KIJAKZAI,
Acting Commissioner of Social Security,[1]

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Kyle Schmidt seeks judicial review of a final decision by Kilolo Kijakzai, Acting Commissioner of Social Security, holding that plaintiff was not disabled within the meaning of the Social Security Act.   Plaintiff contends that the administrative law judge (ALJ) who heard his case erred in assessing his mental limitations, which in turn led to an erroneous conclusion that he could perform a significant number of jobs in the national economy.   For the reasons set out below, I conclude that the ALJ's decision is supported by substantial evidence and that plaintiff's arguments to the contrary lack support and are inconsistent with the record.   Accordingly, I will affirm the acting commissioner's determination that plaintiff is not disabled.

        Plaintiff also contends that the ALJ's decision in this case was constitutionally

---

    [1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former commissioner, Andrew Saul.

1

defective under <u>Seila Law LLC v. Consumer Fin. Prot. Bureau</u>, 140 S. Ct. 2183 (June 29, 2020). I have previously considered, and rejected, this constitutional challenge in <u>Kreibich v. Kijakazi</u>, 20-cv-1045-bbc, 2/23/22, Opin. and Or., dkt. #25, pp. 16-18, and I reject it for the same reasons here, without further discussion.

The following facts are drawn from the Administrative Record (AR), dkt. #7.

BACKGROUND

A. <u>Plaintiff's Application</u>

Plaintiff applied for supplemental security income on March 5, 2019, when he was 19. He alleged he had been disabled since October 1, 2018, because of a variety of mental problems, including major depression, anxiety, agoraphobia, insomnia, and visual and audio hallucinations. AR 14, 187-92. His application was denied initially on June 10, 2019 and on reconsideration on November 26, 2019. In October 2020, he appeared with representation at an administrative hearing, after which the ALJ issued a decision finding him not disabled. The Appeals Council subsequently denied his request for review, making the ALJ's decision the final decision of the acting commissioner. Plaintiff then filed this action under 42 U.S.C. § 405(g).

B. <u>Medical Providers</u>

The record reflects that plaintiff sought treatment for a variety of mental problems. He met frequently with Barbara Theisen, a nurse practitioner. On September 20, 2018, he

told her he was working 10-12 hour days and believed he was schizophrenic because he was hearing whispering or mumbling in his head when he was at work. AR 931. He told her he had been charged with a fourth degree sex offense (having sex with a minor), registered as a sex offender, and had to quit school. AR 931, 934.

Plaintiff said things were going in the right direction, both at home and at work, but he was not sleeping well. Id. Theisen added trazadone for sleep and suggested he get in touch with his therapist. AR 934.

On February 28, 2019, plaintiff started showing symptoms of psychosis, saying he was seeing things and hearing voices telling him he was a failure. His probation officer had called a crisis center, saying he had never seen plaintiff "this bad." AR 504. Plaintiff was held for five days in emergency mental health detention, and discharged on March 5, 2019, by Dr. George Melnyk, who had started plaintiff on medications for his psychosis and depression. AR 504-19. The doctor noted that plaintiff seemed happy with the outcome. AR 519.

Plaintiff saw NP Theisen again on March 18, 2019, shortly after he had been discharged from his mental health detention. He told her he was doing a little better, but was still seeing and hearing things that were not there, although he thought the Abilify medication prescribed for him had helped to decrease his hallucinations. AR 537.

On May 10, 2019, plaintiff told Theisen that his Sertraline medicine was helping his depression but not his sleeping, and that he had not had a problem with hallucinations since he had had the increase in his Abilify. AR 530. However, he still did not want to leave his

house.  Id.  Theisen noted that plaintiff had diagnoses of anxiety, depression, and hallucinations, but was alert, oriented to person, place, and time, with normal memory and judgment.  Id. She also noted that plaintiff was not expressing any suicidal ideation or suicidal plans.  Id.  She suggested he stop drinking caffeine after 4:00 p.m. and limit his video game playing to a few hours before bed, to avoid overstimulation.  Id.

Plaintiff sought emergency hospitalizations twice in July 2019, but on both occasions the examining doctor found no need for it after talking with him.  On July 16, 2019, Dr. Charles Pratt, a Gundersen Health System physician, concluded that plaintiff was not in need of inpatient care after finding that he had normal speech and behavior, was alert and oriented, and had normal mood, although he was anxious.  AR 598-601.

On July 20, 2019, plaintiff was back at the emergency room, again asking for voluntary admission.  Another Gundersen doctor, Niel Johnson, assessed plaintiff and concluded he was not in active distress.  After consulting with the provider at Northwest Connection who had seen plaintiff in February, Dr. Johnson decided plaintiff did not need inpatient treatment.  AR 603-09.

On July 31, 2019, plaintiff began seeing NP Heather Greilling, in place of NP Theisen.  He told her he was having audio and visual hallucinations, one of which was in the form of a woman who came to him when he drove, telling him he was a failure who could not do anything right.   AR 611.   Greilling assessed plaintiff as having decreased concentration, hallucinations, sleep disturbance, and suicidal ideas.  AR 612.  She noted that plaintiff was scheduled to see psychiatrist Donald Fischer.  AR 613.

4

Plaintiff's probation officer arranged for him to meet with a counselor at Adams County Health & Human Servicesbe.  Plaintiff saw Rebecca Burruss on July 30, 2019 for an initial evaluation of his mental status.  AR 688.  He told her he had earned a general equivalency degree in high school.  He also told her about having been charged with a fourth degree sexual offense when he was a junior in high school and later working in a factory for about a month before finding that he could not handle the position because of his "mental state."  AR 688-90.  Id.

Plaintiff told Burruss he had had a diagnosis of schizophrenia at the time of his February-March 2019 hospitalization and also suffered from hallucinations, depression, and anxiety.  AR 690. He said he was unemployed and had to struggle to keep a job because of his mental state.  Id.  Burruss concluded that plaintiff suffered from generalized anxiety disorder and major depressive disorder, severe, with psychotic features.  AR 691.

On August 13, 2019, Burruss reported that plaintiff was much calmer, denying hallucinations, oriented,  and with only some delusional thinking.  AR 690.  However, he said he still had a racing mind, had trouble falling asleep, experienced anxiety around stressful situations, and dreamed of dead people in gruesome situations.  Id. After continued discussion with Burruss, however, he assessed his feelings of depression as 4/5 instead of the 9/10 he had reported at the start of the session.  Id.  Burruss saw plaintiff again on August 29, 2019, before turning his case over to another therapist.  AR 695.

Plaintiff began seeing Dr. Donald Fischer, M.D., in August 2019.  He told the doctor that he had been bullied in school and had been treated for depression since junior high

school and had been given a diagnosis of schizophrenia when he was hospitalized in February 2019.  AR 685.  Plaintiff denied having trouble falling asleep and staying asleep, but said he had visual hallucinations, imagining people he was with as being dead, and had had these since he was in middle school.  Id.  He also said he was taking Abilify, which helped with the voices and the visual hallucinations he experienced.  Id.

Plaintiff discussed a number of problems:  having a compulsive disorder, feelings of hopelessness, helplessness, depression, lack of energy, decreased appetite, suicidal ideation, trouble falling asleep and staying asleep, auditory hallucinations, a racing mind, night terrors, and agoraphobia, with no plans for suicide.  AR 686.  Plaintiff also told the doctor that he drank three cups of coffee and "about" four caffeinated sodas each day.  Id.

Dr. Fischer observed that plaintiff had good eye contact, clear thoughts, and seemed goal directed.  Id.  It was his opinion that plaintiff's "affect was not truly connected to any of the symptoms" he described.  Id.  He saw plaintiff again on September 12, 2019, describing him as having a racing mind, trouble falling asleep and then waking in the middle of the night.  AR 697.  Plaintiff said he was still seeing dead people in his dreams.  Id.  He also complained of anxiety.  Id.

Plaintiff saw Dr. Fischer again in January 6, 2020.  AR 978.  The doctor approved giving plaintiff Aristada by injection and Abilify orally.  He saw him again in February 2020, when the doctor noted plaintiff's problems with follow-up and being late for his appointment, but found that plaintiff had good eye contact, clear thought, and was goal directed.  AR 989.  He approved an increase in plaintiff's dosage of Aristada.  AR 989.

NP Greilling saw plaintiff on January 27, 2020, assessing his mood as anxious and depressed, but not homicidal or suicidal.  AR 877.  On February 26, 2020, she noted that he appeared anxious and depressed but did not express any suicidal ideation.  He said he had thinking about going back to school to become a diesel mechanic.  AR 907-10.

After the pandemic began, plaintiff had telephone contact via TeleM5ed with Dr. Fischer in April 2020.  AR 983.  He told the doctor his sleep was better and he had only occasional mind racing, which the doctor thought were "two very good signs."  Id.   On a TeleMed call in June 2020, plaintiff reported increased anxiety causing some mind racing, as well as low level auditory hallucinations and some paranoia.  AR 981.

C.  Consultants

1. Lesley Baird Chapin, Psy.D.

Psychologist Chapin, a consultative examiner, met with plaintiff on June 4, 2019 for a mental status examination.  AR 570-77.  Plaintiff told her he was applying for disability because he had been seeing and hearing things that were not ordinary.  Id.   He said he had had similar auditory and visual hallucinations since elementary school and they had worsened over time, particularly after his conviction for a sex offense.  AR 571-72.  However, they had lessened after he was prescribed Abilify.  AR 571.  Plaintiff told Chapin that he was not allowed to finish high school because of his sexual offense, but he had obtained a general education degree at an alternative school.  AR 571-72.  He said he had held jobs in the past and was interested in a factory job he had heard about.  He lived with his mother, to whom

he was particularly close, and his stepfather, and he performed chores, such as helping care for their dogs, doing dishes, and cleaning his own space.  AR 572-73.

Plaintiff told Chapin he had had a diagnosis of PTSD but said he had never experienced a traumatic event, other than seeing things.  AR 574.   He added that his concentration was not good and he had trouble sleeping.  Id.

Chapin described plaintiff as fairly unkempt and exhibiting an anxious, depressed mood, with poor eye contract, a restricted affect, and limited abstract thinking.  At the same time, however, she found that he presented as socially appropriate, alert, engaged, calm, and cooperative.  He exhibited the ability to speak clearly, articulate his thoughts and answer questions understandably.  Chapin found his thought process to be logical, organized, and goal-oriented, free of homicidal or suicidal ideation and also found his fund of knowledge, insight and judgment all adequate, as were his remote and recent memory.  AR 570–77.  With regard to concentration, Chapin found plaintiff had only mild limitations, noting that he was able to follow their conversation "generally well without overt difficulty" and remained on task throughout.  AR 575.

Chapin's diagnostic impression was that plaintiff had a severe major depressive disorder, with psychotic features, as well as an unspecified anxiety disorder.  AR 577.  In her opinion, plaintiff's impairments imposed only mild limitations on his ability to understand, remember, and carry out simple instructions; respond appropriately to supervisors and co-workers; maintain concentration, attention, and pace; and adapt to changes.  However, she thought he would have a moderate to marked limitation regarding his ability to withstand

8

routine work stress.  AR 577.

### D. Administrative Hearing

At his administrative hearing, plaintiff testified that he had performed previous factory work in 2018 as a molding machine operator, lifting or carrying between 20 to 50 pounds, and had been laid off after three months.  AR 46, 47, 48.  He had also been a grill worker in a fast food establishment, working on his feet about 99 percent of the time, AR 47, and had been laid off when he could not work full-time, AR 49.  He had also worked for a paper making factory for about a month and one- half and had left because of his depression and anxiety.  AR 50.  He had an opportunity to take part in a jobs program, but left the program before completing it because of depression, anxiety, and delusions.  Plaintiff said he was unable to work because he "overthink[s] a lot" and his "mind isn't right."  AR 48.

The ALJ called an impartial vocational expert, Helen Topcik, to testify.  The ALJ asked Topcik to assume a person with no exertional restrictions who could interact only occasionally with the public or with co-workers; understand, remember, and carry out only simple instructions; make simple work-related decisions; and tolerate occasional changes in a routine work setting.  AR 59.  Making that assumption, Topcik testified that such a person would be incapable of performing plaintiff's past work as a molder or fast-food worker, but could perform other unskilled jobs.  Specifically, she testified that a person with the limitations described by the ALJ could perform the following jobs: (1) janitor, which is

classified as medium and 381.687-018, and of which there are approximately 150,000 jobs in the country; (2) night cleaner, classified as light and 323.687-014, of which there are about 250,000 jobs in the country; and (3) sedentary inspector, classified as unskilled and sedentary, of which there are 75,000 in the country.  This last  job category includes four DOT numbers, one of which is woodworking inspector, 669.687-014, and would be included only if it was at a bench or a table.  AR 61.  According to the vocational expert, all of the jobs she identified would be SVP (specific vocational level) 2.  AR 60.  Moreover, none of the jobs would require any contact with the public.  AR 62.

### E. <u>Administrative Law Judge's Decision</u>

In deciding whether plaintiff was disabled, the ALJ followed the five-step sequential evaluation of disability set out in the regulations.  20 C.F.R. § 416.920.  At step one, she determined that plaintiff had not engaged in substantial gainful activity since his application date of March 5, 2019.

At step two, she found that plaintiff had the severe mental impairments of insomnia, depressive disorder, schizoaffective disorder, anxiety disorder, and adjustment disorder.  At step three, the ALJ found that these severe impairments did not meet or medically equal a listed impairment.  In arriving at that conclusion, the ALJ followed the "special technique" set forth in the regulations and rated plaintiff's degree of limitation in four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20

C.F.R. § 416.920a(c). The ALJ determined that plaintiff had moderate limitations in all four categories, which meant that none of his impairments was severe enough to meet a listing. (In applying the special technique, the ALJ must rate the claimant's degree of limitation using the following five-point scale: None, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a. In general, for a mental impairment to be found severe enough to meet a listing, a claimant must have at least two "marked" limitations or one "extreme" limitation of the four listed areas. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00A.).

The ALJ then proceeded to assess plaintiff's residual functional capacity (RFC). She found he had no physical limitations and was therefore capable of performing work at all exertional levels. Mentally, she found that plaintiff could understand, remember, and carry out simple instructions and, although he could not work at a production rate pace, such as on an assembly line, he could make simple work-related decisions and interact occasionally with co-workers and the public. AR 20.

At step four of the required analysis, the ALJ determined from the testimony of the vocational expert that plaintiff was unable to perform any past relevant work. AR 27. At step five, she found that there were unskilled jobs existing in significant numbers in the national economy that plaintiff could perform, including janitor, night cleaner, and woodworking inspector. AR 28.

After the ALJ denied plaintiff's claim for supplemental security income, plaintiff sought review of the decision by the Appeals Council. The council denied his request in June 2021 and he now seeks judicial review under 42 U.S.C. § 405(g).

OPINION

Under the holding in <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148 (2019), this court must decide whether the ALJ's decision is supported by "sufficient evidence to support the agency's factual determination." <u>Id</u>. at 1154.  Doing so requires the court to determine whether the ALJ's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>id</u>., and also whether the ALJ has identified the evidence and built a "logical bridge" between it and the ultimate determination. <u>Moon v. Colvin</u>, 763 F.3d 718, 721 (7th Cir. 2014).  The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." <u>Gedatus v. Saul</u>, 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff contests the ALJ's RFC finding.  Specifically, he challenges the ALJ's findings that he can interact occasionally with co-workers and the public and can maintain sufficient concentration and persistence to perform unskilled work.  Plaintiff argues that in reaching these findings, the ALJ "cherry picked" the evidence of record and failed to build an accurate and logical bridge between the evidence and her conclusions.  He also contends the ALJ committed legal error by failing to follow the commissioner's special technique for assessing mental impairments.

A.  <u>Interacting With Others</u>

As noted above, the ALJ found that plaintiff was "moderately" limited in his ability

to interact with others, a limitation she accommodated by restricting the types of jobs he could perform to those requiring only occasional interactions with co-workers and the public. In reaching this conclusion, the ALJ relied in part on plaintiff's statements on a function report, that he was able to go out alone, shop in stores, engage in social activities with his family a few times a week, and get along with authority figures.  AR 19.  She also noted that although plaintiff had some abnormal signs on mental status examinations, he was often found to be alert and oriented, with no agitation, good eye contact, normal speech, and goal-directed thoughts.  In addition, she noted that these findings were generally consistent with Chapin's consultative mental status evaluation on June 4, 2019, during which she found plaintiff to be socially appropriate, alert, oriented, engaged, calm and cooperative (while also observing him to be fairly unkempt, with poor eye contact and restricted affect).  AR 19, 26. Finally, the ALJ pointed to records indicating that plaintiff had gone to races and engaged in zip-lining with a friend.  AR 19.

Plaintiff says these findings do not amount to substantial evidence to support a conclusion that he could tolerate occasional interactions with others because the ALJ "cherry-picked" the evidence; that is, he selected for discussion only those records that supported a finding of non-disability and ignored those favorable to plaintiff.  Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010). Specifically, plaintiff argues that the ALJ overlooked clinical records indicating that he had a diagnosis of agoraphobia with panic, failed to note that he interacted with others in "structured" settings, and overemphasized so-called "normal" mental status findings.

13

Plaintiff's accusation of cherry-picking is not persuasive.  It is well-settled that an ALJ need not discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability.  Deborah M. v. Saul, 994 F.3d 785, 789 (7th Cir. 2021)(citations omitted).  Plaintiff has not identified such a "line of evidence."  With respect to the agoraphobia diagnosis, the ALJ found that plaintiff suffered from anxiety disorder, of which agoraphobia is one type.  See https://www.mayoclinic.org/diseases-conditions/agoraphobia (visited Aug. 14, 2022). Moreover, a diagnosis alone is not evidence of disability; what matters are the work-related limitations that result from a particular medical impairment.  Weaver v. Berryhill, 746 F. App'x 574, 579 (7th Cir. 2018) ("It was [the plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."); Perez v. Astrue, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012) ("A diagnoses, or symptom for that matter, does not automatically translate to a limitation or impairment and simply listing them proves nothing.").  Apart from the mere diagnosis, plaintiff does not identify any evidence overlooked by the ALJ proving that his agoraphobia is so severe as to prevent him from occasionally interacting with coworkers.  (Whether plaintiff can handle occasional public interaction is irrelevant, given the vocational expert's testimony that none of the jobs she identified require public interaction.)

I also find no error by the ALJ with respect to her handling of plaintiff's function report.  Plaintiff contends that the ALJ should have taken into consideration his efforts to avoid crowds and large stores, his aversion to people that has resulted in his having only one

true friend (his mother), minimizing the number of times he goes out, and limiting his interactions with family to one trusted relative (his uncle).  However, the ALJ did not reject these allegations as incredible, nor did she reject plaintiff's allegations of severe anxiety.  To the contrary, she accommodated his impairment by finding that he could handle only occasional (up to 1/3 of the workday) interactions with coworkers.  Plaintiff suggests that the ALJ should have gone further and found he could handle no social interaction at all, but, again, he fails to identify evidence compelling this conclusion.  As the ALJ noted, in spite of his reported fear of others, plaintiff was able to go out alone to stores and other public places and he reported no problems getting along with others.  In addition, the ALJ noted that, although plaintiff was sometimes described during mental status evaluations as anxious or depressed with a flat affect, at other times he displayed good eye contact, normal speech, and goal-directed thoughts, and Dr. Chapin described him as "socially appropriate" and cooperative.  Contrary to plaintiff's argument, his ability to engage appropriately with his health providers during mental status evaluations is clinical evidence supporting the ALJ's assessment of his social limitations.  Overall, I am satisfied that limiting plaintiff to occasional contact with others was a reasonable way to resolve the conflicting evidence in the record.  Denton, 596 F.3d at 425–26 (concluding that substantial evidence supported the ALJ's analysis where the ALJ "specifically addressed all the evidence that [the claimant] point[ed] out" but declined to "assign the significance to it that [the claimant] prefer[red]").

Finally, plaintiff argues that reversal is required because the ALJ did not adequately explain *how* limiting plaintiff to occasional interactions with coworkers would accommodate

his social limitations. In plaintiff's view, it would have been more appropriate for the ALJ to limit the *number* of people with whom plaintiff came into contact rather than the frequency of those interactions. Once again, however, plaintiff fails to identify evidence in the record that compels such a limitation. "An ALJ adequately supports his RFC determination when he 'consider[s] all limitations supported by [the] record evidence' and 'tie[s] the record evidence to the limitations included in the RFC finding.'" Vang v. Saul, 805 F. App'x 398, 402 (7th Cir. 2020) (quoting Jozefyk v. Berryhill, 923 F.3d 492, 497–98 (7th Cir. 2019)). In this case, the ALJ reasonably determined from the record as a whole that plaintiff could work if he did not have to interact with others more than occasionally; that she might have phrased the RFC in different terms does not justify remand.

## B. Concentration, Persistence, and Pace

Plaintiff argues that the ALJ's finding that plaintiff could maintain concentration, persistence and pace adequately to perform simple, unskilled work with no production rate pace is not supported by substantial evidence because it is inconsistent with numerous reports in the record indicating that plaintiff suffers from visual and auditory hallucinations. However, the ALJ reasonably concluded that plaintiff's reported hallucinations were not so distracting or pervasive as to preclude him from unskilled work. As plaintiff acknowledges, the ALJ considered the reports of hallucinations in plaintiff's medical records. As the ALJ noted, however, plaintiff generally reported a good response from his medications, and, although the hallucinations did not subside completely, by the middle of 2020, plaintiff was

16

reporting that he was doing fairly well, had generally unremarkable mental status evaluations, was considering going to school to be a diesel mechanic, and had no new complaints or concerns.  AR 22-23.  Plaintiff complains that the ALJ did not adequately explain how he could concentrate when he was hearing voices or seeing things, but it was plaintiff's burden to produce evidence showing how his impairments affected his ability to work, not the commissioner's.  Summers v. Berryhill, 864 F.3d 523, 527 (7th Cir. 2017). Simply pointing to medical records indicating that plaintiff reported hallucinations is not sufficient to show that he could not adequately remember and carry out simple work tasks, particularly given the lack of any significant abnormalities detected by plaintiff's providers during mental status evaluations, as well as plaintiff's ability to carry out tasks such as driving, going to stores, and interacting with his mother, uncle and, occasionally, a friend. Because plaintiff has failed to identify medical evidence supporting greater restrictions on concentration, persistence, and pace than the ALJ found, reversal on this ground is not warranted.  Loveless v. Colvin, 810 F.3d 502, 508 (7th Cir. 2016).

## C.  "Special Technique"

Finally, plaintiff argues that the ALJ committed "legal error" by failing to properly apply the "special technique" to assess his mental impairments.  More specifically, he argues that the ALJ violated 20 C.F.R. 416.920a(c), which required her to consider "all relevant and available clinical signs and findings including structured settings, medication, and other treatment" in assessing the claimant's degree of functional limitation in the four relevant

areas.  This argument requires little discussion.  As required by the regulation, the ALJ rated plaintiff's degree of functioning in the four functional areas as part of her assessment of plaintiff's mental impairments at step three of the sequential analysis, documenting her findings in her decision.  AR 18-20.  In reality, plaintiff's claim is not that the ALJ failed to conduct the required assessment; rather, he disagrees with her findings.  As already discussed, however, it is not enough for plaintiff merely to show that the record permitted a different conclusion.  Rather, he must show that the manner in which the ALJ resolved the conflicting evidence in the record was unreasonable.  For the reasons already discussed, I find that plaintiff has failed to make that showing.

In short, plaintiff has failed to show that the ALJ's decision is not supported by substantial evidence in the record.  Borovsky v. Holder, 612 F.3d 917, 921 (7th Cir. 2010) (under deferential substantial evidence standard, courts do not reverse an ALJ's decision unless the "record 'compels' a contrary result."').  Moreover, despite plaintiff's contention, the ALJ did build the necessary "logical bridge" without omitting  any highly pertinent evidence, thus allowing a reviewing court to trace the path of her reasoning.  Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).  Accordingly, the acting commissioner's decision must be affirmed.

ORDER

IT IS ORDERED THAT the decision of the Acting Commissioner of Social Security denying Kyle Schmidt's application for supplemental security income under the Social

Security Act is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 16th day of August, 2022.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge